UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:00CR263(JCH) |
| | : | |
| v. | : | |
| | : | |
| DAVID L. BURDEN | : | |
|     a/k/a DAVID "QB" BURDEN | : | AUGUST 3, 2005 |

**GOVERNMENT'S MEMORANDUM IN AID
OF POST-*CROSBY* PROCEEDINGS ON REMAND**

The Government respectfully submits this memorandum in response to the Court's Order dated June 21, 2005, inviting written submissions from the parties on whether the Court would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory; and otherwise in aid of proceedings on remand from the United States Court of Appeals for the Second Circuit.

**I.      Procedural History**

On February 11, 2003, the defendant, David "QB" Burden, was convicted, following a six-week jury trial, of (1) racketeering; (2) racketeering conspiracy; (3) VCAR conspiracy to murder members of the Hill Crew; (4) the VCAR attempted murder of Fred Hatton and other members of the Hill Crew on September 3, 1999; and (5) a conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base and a detectable amount of cocaine.

On October 8, 2003, following three sentencing hearings, the Court sentenced the defendant to 210 months on Counts One, Two and Twelve of the Third Superseding Indictment, and for a term of ten years on Counts Nine and Ten, all terms to run concurrent to the sentence on the first count. That same day, the defendant timely filed his notice of appeal.

On April 4, 2005, the United States Court of Appeals for the Second Circuit ordered a limited remand in this case, upon request of the Government, in light of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

On June 21, 2005, the Court issued an Order inviting simultaneous briefing from the parties on the question whether it would have imposed a non-trivially different sentence in the case if the Sentencing Guidelines had been advisory. The instant memorandum is the Government's submission in that regard.

**II.    Purpose of *Crosby* Remand**

In Booker, the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. §3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." Id. At 765-66.

In Crosby, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to Booker "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." Crosby, 397 F.3d at 117. In this respect, the Court of Appeals explained that a

remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-Booker/Fanfan regime and counsel had availed themselves of their new opportunities to present relevant considerations." Id. (emphasis added).

This statement of the purpose for Crosby remands makes clear that certain issues are simply irrelevant to this Court's determination whether to re-sentence. Specifically, because this Court must determine whether to re-sentence based on "the circumstances existing at the time of the original sentence," id., arguments relating to post-sentencing factors are irrelevant. In short, the court must determine whether it would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory at the time of the original sentence, and under the circumstances existing at the time of the original sentence.

**III.    There is No Compelling Reason to Re-Sentence in this Case Because the Court Carefully Considered All of the Relevant Sentencing Considerations at the Time of Sentencing; Exercised Significant Discretion in its Quantity and Departure Findings; and Clearly Indicated that the Resulting Sentence was Appropriate.**

Sentencing in the post-Booker regime, as explained in Crosby, now involves two analytic stages: first, a determination of the applicable Guidelines range (including any departures); and second, a determination of whether in light of the Guidelines and the other factors listed in 18 U.S.C. §3553(a), there is any reason to impose a non-Guidelines sentence. Crosby, 397 F.3d at 113. A review of the record in this case demonstrates that the Court already engaged in such an analysis and indeed, strongly suggested, while exercising its discretion in denying a heartland departure in its initial sentencing, that there was no reason to impose a non-Guidelines sentence.

3

Indeed, during the course of the three separate sentencing hearings conducted in this case, the Court: (1) heard extensive argument regarding the drug quantity properly attributable to the defendant, ultimately deviating from the PSR to find 50 to 150 grams of cocaine base – rather than 1.5 kilograms or more of cocaine base – attributable to the defendant, see, e.g., Sentencing Transcript, 10/8/2003 at 50; and (2) awarded the defendant a downward / horizontal departure on the grounds that he was more appropriately placed in a Criminal History Category II, rather than a Criminal History Category III. See, e.g., Sentencing Transcript, 10/8/2003 at 79-80.

In doing so, however, the Court made it quite clear that its findings on the drug quantity attributable to the defendant, its decision on the applicable criminal history category, and ultimately, the sentence that it imposed, were entirely appropriate for this defendant. See, e.g., Sentencing Transcript, 10/8/2003 at 67 ("I've made the decision about quantity based on the record I thought that is before me . . . ."); Sentencing Transcript at 79 ("It is the conclusion of this Court to exercise its discretion to depart to the next lower criminal history level. The Court does not find level I to be appropriate . . . He's clearly not a level I. He has had brushes with the law, and more than one. However, the Court finds that Criminal History II more appropriately reflects the extent to which his criminal history is an indicator of his likelihood of recidivism.").

Moreover, the record from all three sentencing hearings is entirely devoid of any comment or suggestion by the Court that it was somehow constrained by the Guidelines, or that it would have reached different conclusions or arrived at a different sentence if the Court were not constrained by the then-mandatory nature of the Sentencing Guidelines. To the contrary, although the Court commented, and the government agreed, that 30 to life was a very severe punishment for this defendant, see Sentencing Transcript at 68, the Court labored to arrive at

what it believed was an appropriate Guidelines range and strongly suggested, after having made the significantly reduced quantity finding, that the sentence the Court was reaching was entirely appropriate given this defendant's involvement in the racketeering enterprise; his involvement in an extensive narcotics trafficking conspiracy; and his personal involvement in associated acts of violence:

> I think both in terms of role, in terms of quantity, in terms of time in the drug conspiracy, that the Court has, in effect, by its finding, what was the jointly undertaken activity of this defendant, in effect made this case not (inaudible) *but, in fact, in a guideline range which is very much reflective of where the sentencing commission thought a defendant like David L. Burden, for exacting the number of drug transactions that he did, and engaging in the other crimes that he did, ought to fall.*

Sentencing Transcript, 10/8/2003 at 71-72 (emphasis added). In short, and as set forth in greater detail below, there does not appear to be any suggestion in the record that the Court would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory.

### *Discussion*

The district court in this case presided over nearly six weeks of evidence in a trial in January and February 2003. The court also reviewed and considered extensive briefing, and held extensive oral argument in connection with this, and other defendants' post-trial motions for judgment of acquittal and/or a new trial. During the course of those proceedings, as well as during other related proceedings, the court, on several occasions, noted its having extensively and thoroughly reviewed, and re-reviewed, the trial evidence and transcripts.

The defendant's Guidelines were calculated in the Pre-Sentence Report ("PSR"), as follows:

Case 3:00-cr-00263-JCH    Document 1755    Filed 08/03/2005    Page 6 of 16

**Group One: Count One, Act One, Count Two and Count Twelve – Drug Conspiracy**

| | |
|---|---:|
| Drug Quantity (1.5 kilograms or more of cocaine base) U.S.S.G. §2D1.1(c)(1) | 38 |
| Use of Firearm(s) in Connection with the Offense | +2 |
| Adjustment for Role in the Offense: None | 0 |
| Victim Related Adjustment: None | 0 |
| Adjustment for Obstruction of Justice: None | 0 |
| Adjusted Offense Level (Subtotal): | 40 |

**Group Two: Count One, Acts 5A, 5B, Count Nine – Conspiracy / Attempted Murder of Members of the Hill Crew, and Count Ten – Attempted Murder of Members of the Hill Crew / Fred Hatton**

| | |
|---|---:|
| VCAR / Attempted Murder – U.S.S.G. §§2E1.1(a)(2), 2A2.1(a)(1) | 28 |
| Victim Suffered Serious Bodily Injury – U.S.S.G. §2A2.1(b)(1)(B) | +2 |
| Adjustment for Role in the Offense: None | 0 |
| Victim Related Adjustment: None | 0 |
| Adjustment for Obstruction of Justice: None | 0 |
| Adjusted Offense Level (Subtotal): | 30 |

| | Adjusted Offense Level | Units |
|---|:---:|---:|
| Group One | 40 | 1 |
| Group Two | 30 | 0 |
| Total Number of Units: | | 1 |
| Increase in Offense Level Based on Total Number of Units: | | 0 |
| Highest Adjusted Offense Level: | | 40 |

| | |
|---|---:|
| Combined Adjusted Offense Level: | 40 |
| Adjustment for Acceptance of Responsbility: None | 0 |
| Total Offense Level: | 40 |

See PSR ¶¶ 46-66. The PSR also determined the defendant to be in Criminal History Category III.  See PSR ¶¶ 67-72; but see Sentencing Transcript, 10/8/2003 at 55 (Court notes a total of 5, not 6 criminal history points, nevertheless still resulting in Criminal History Category III).

Accordingly, the PSR determined, that a total offense level 40 with a criminal history category III, resulted in an applicable Guidelines range of 360 months to life imprisonment.  See PSR ¶94.

At the original sentencing hearings in this case, the district court, well versed in the evidence at trial and the overall record, conducted a thorough analysis in reaching its determination of what it believed to be the appropriate Guidelines range for the defendant. Indeed, the Court held three separate sentencing hearings related to David L. Burden – one on May 16, 2003, one on September 5, 2003 and one on October 8, 2003 – the transcripts for which total approximately 286 pages.  During the course of those hearings, the Court heard evidence and extensive argument on the issue of the drug quantity appropriately attributable to David L. Burden and specifically, what was properly attributable to him, in addition to his own personal distribution quantities, as reasonably foreseeable, jointly undertaken activity through his participation in the overall drug conspiracy.  Although the government strongly disagreed with the Court's ultimate findings regarding quantity during those hearings, the Court carefully and thoroughly considered the parties' arguments on the issue – indeed most, if not all, of the May 16 and September 5, 2003 hearings focused on the question of quantity, as did the bulk of the

hearing on October 8, 2003 as well. See Sentencing Transcript dated 5/16/2003; Sentencing Transcript dated September 5, 2003 and Sentencing Transcript dated 10/8/2003 at 1-51.

Specifically, after hearing evidence and extensive argument on the drug quantity issue, the Court ultimately found only 50 to 150 grams of cocaine base attributable to this defendant, rather than the 1.5 kilograms or more urged by the government and set forth in the PSR. See Sentencing Transcript, 10/8/2003 at 23-51. In light of the Court's finding on quantity, it then determined the applicable base offense level to be 32. See Sentencing Transcript, 10/8/2003 at 51. The Court then awarded a two-level enhancement for the defendant's possession of firearms in connection with his drug dealing. Id. And, although it was no longer pressed in light of the Court's finding on quantity, the Court went on to reject the defendant's claim for a mitigating role reduction. Id. at 51-52:

> Based upon the Court's finding as to quantity, it is absolutely unsupported to say that this defendant had a significantly less culpable role than the average person found to have distributed between 50 and 150 grams of crack cocaine. That is, in fact, what this defendant did himself . . . . So, in light of the Court's findings with respect to the quantity attributable to him for base offense level purposes, the Court denies the (inaudible) request for a role adjustment.

The Court then went on to determine the applicable Guideline range as follows. For Group One, the Court found a base offense level of 32 because of its view that the defendant's offense and relevant conduct involved between 50 and 150 grams of cocaine base. See Sentencing Transcript, 10/8/2003 at 51. The Court further applied a 2 level enhancement because the defendant possessed firearms in connection with the offense. See Sentencing Transcript, 10/8/2003 at 51. After rejecting any mitigating role, the Court found the adjusted offense level to be 34, under Group One. See Sentencing Transcript, 10/8/2003 at 53.

For Group Two, having to do with the defendant's participation in the conspiracy and attempted murders of members of the Hill Crew and Fred Hatton, the Court found that the VCAR Guideline, U.S.S.G. § 2E1.1(a)(2), instructed the use of U.S.S.G. § 2A2.1(a)(1), which establishes a base offense level of 28 for attempted murder. See Sentencing Transcript, 10/8/2003 at 53. The Court attributed an additional two levels to the defendant because one of his acts of violence resulted in serious bodily injury to shooting victim Arnold Blake. Id. Accordingly, the Court found an adjusted offense level of 30 for Group Two. Id.

As opposed to the total adjusted offense level of 40 set forth in the PSR, the Court then determined the total adjusted offense level to be 36, as follows:

> Now, because we have Group I at 34, and Group II at 30, under 3B1.4, I add one unit for the Group I offense, and because it's only separated – the two groups are separated by only four levels, I need to add another full unit for the second group, in effect. That results in two units, which results in an increase of the offense level of the highest grouping, which in this case is Group I at level 34. Therefore, it ends up being Level 36.

See Sentencing Transcript, 10/8/2003 at 54. In terms of the criminal history calculation, the Court stated "the presentence report indicates, at paragraph 72, that there are a total of six points and, in fact, I believe there are only five points. That needs to be amended." The Court went on to set forth its calculation "resulting in a total of five points, which places [the defendant] in a criminal history category of III." The Court concluded that a criminal history category III, with an offense level of 36, resulted in an applicable Guidelines range of 235 to 293 months.

The Court then went on to consider the defendant's various arguments in favor of a downward departure, which included minor participant issues; quantity issues; "outside the heartland" arguments; and a claim that the defendant's criminal history category over-represented

9

the seriousness of his criminal past.  First, with respect to the defendant's claim for a downward departure based on minor participant arguments, the defendant withdrew the claim.  See Sentencing Transcript, 10/8/2003 at 69 (THE COURT: Third is the minor participant one.  Are you asking me to depart on that ground?  MR. FROST: No, Your Honor.").

Similarly, with respect to the so-called "time-quantity factor" issues, although the defendant wished to preserve the argument, it was no longer pressed as a ground for downward departure in light of the Court's quantity calculation, see Sentencing Transcript, 10/8/2003 at 57 and 68 ("The second is this time quantity argument you made, which I will address because although you say you aren't pressing it, it – you didn't take it – you didn't withdraw it, I guess I'll say.").  The Court went on to reject that ground, stating that it had already effectively dealt with the quantity issue.  Id. at 73.

With respect to the defendant's criminal history, however, the Court agreed with the defendant's claim that a Criminal History Category III over-represented David L. Burden's criminal past.  Specifically, the Court, after hearing argument from both counsel, see Sentencing Transcript, 10/8/2003 at 57-71, rendered its ruling, granting the downward departure.  See id. at 73-80.  In that regard, the Court ultimately stated:

> It is the conclusion of this Court to exercise its discretion to depart to the next lower criminal history level.  *The Court does not find Level I to be appropriate.  The Court understands that it needs to go horizontally to the criminal history level until it finds a level that appopriately reflects the criminal history of this defendant, which the Court finds to be Level II.  He's clearly not a Level I.  He has had brushes with the law, and more than one*.  However, the Court finds that Criminal History II more appropriately reflects the extent to which his criminal history is an indicator of his likelihood of recidivism.

Sentencing Transcript, 10/8/2003 at 79 (emphasis added).  The Court therefore granted the

10

defendant's request for a downward departure, and did "depart downward to Level II." Id. at 80. The Court then found that the "guideline range applicable in connection with his sentence is 36, Level II, which is 210 to 262." Id.

The Court then proceeded to impose its sentence of a term of 210 months on Counts One, Two and Twelve of the Third Superseding Indictment, and for a term of ten years on Counts Nine and Ten, all terms to run concurrently to Count One. Id. at 81-82.

Although the government respectfully disagreed with certain of the Court's findings, in light of the district court's careful consideration of all of the applicable sentencing issues at the original sentencing, and its having extensively and thoroughly reviewed the record evidence to carefully arrive at the sentence which it imposed – including its full consideration, and indeed granting, of the defendant's arguments regarding drug quantity and a criminal history departure – there is simply no compelling reason to revisit the Court's sentence with a resentencing. Significantly, the Court's comments made in connection with its sentencing, and at the time it imposed its sentence, suggest that the District Court had every intention of sentencing the defendant to the term of imprisonment that it imposed. When imposing sentence, the Court commented:

> I really don't have much to say to you. I really don't even know what to say to you because I don't know what's on your mind.
>
> I appreciate the fact, I'm sure your lawyer has advised you not to speak because you have some serious – you have appeal rights that you wish to preserve and you obviously cannot incriminate yourself in any way. I understand that, but I guess it's hard to say something to you when I don't really know what your frame of mind is, but I guess I'll go ahead and say it anyways.
>
> I think the fact you're standing in front of me today is a tragedy. It appears, from the presentence report, that you are really – were, at least, before you got involved in all

of this, really well liked and a good person, that you had a lot of talent and ability, and most importantly, I think you had the support of family and friends.

I don't pretend to understand at all how you got caught up in this, other than I suppose it was family (inaudible), it's what you saw happening on the streets, but it really is a tragedy.

My hope is – I know the sentence I've imposed on you, I mean, it could have been a lot longer, I guess I'll say that, but even so, it's still a very long sentence. By my calculations, if you earn good time credits I think you'd be released in about thirteen years. You will still have a large part of you [sic] life ahead of you. I'm assuming your family will be here waiting for you when you're discharged.

I put you on a supervised release period of eight years. I did that because it's my hope that you're gonna come out of this with an attitude that you have a lot to give to your family, to your children, and that you'll decide to live a constructive life that supports your family, as opposed to tearing them apart. If I'm wrong about that though, I just – I'm sure Attorney Frost will explain this to you, you'll probably forget about it by the time you get out, I hope the probation officer will explain it to you, if you go back to the life you were living when you were arrested in 2001, you're gonna face more time from me in prison for violating probation.

You cannot ever possess a gun again for life, for example, and if you did, you would be committing a federal crime . . .

So my hope is that you get through the years you have ahead of you in incarceration, and that when you get out you take advantage of the probation office's support of you, and their help with – in getting you a job, or whatever training you might be interested in, and getting you in a position where you can be gainfully employed and supporting your family.

I don't know if that has any meaning to you at all, Mr. Burden, but I guess the bottom line is I wish you the best of good fortune as you go forward. You still have a life to live that I think can be constructive.

Sentencing Transcript, 10/8/2003 at 85-87.

In the Government's view, the Court's carefully considered sentence reflected not only this defendant's involvement in an extensive narcotics trafficking conspiracy, but perhaps more importantly, his RICO conviction and, as also found by the jury, his personal participation and

involvement in certain crimes of violence related to the Burden Organization, including the shooting incident for which he was convicted that resulted in Arnold Blake being struck in the back. See, e.g., Sentencing Transcript, 10/8/2003 at 38 ("Taking the record as a whole, it reveals that David L. Burden joined the conspiracy, likely sometime in the later part of 1999 or the beginning of 2000, at the age of 17, as a street dealer. He engaged in a series of acts of violence over a – or attempted acts of violence, over a three month period in late summer and early fall of 1999, and he regularly carried a firearm."). In that regard, the sentence imposed in this case was reasonable because it served several purposes of punishment as identified in § 3553(a). Specifically, the sentence in this case, a significant term at the bottom of an already significantly reduced Guidelines range, reflected the "nature and circumstances of the offense," § 3553(a)(1) – including the serious acts of violence of which the defendant was convicted; the need for the sentence to provide "adequate deterrence to criminal conduct," § 3553(a)(2)(B); and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A).

      Perhaps more importantly, there appears to be no statement, indication or suggestion by the Court anywhere in the sentencing transcripts indicating that it was somehow constrained by the Guidelines, or that it would have reached different conclusions or arrived at a different sentence if the Court were not constrained by the then-mandatory nature of the Sentencing Guidelines. Indeed, to the contrary, and as noted above, the Court, while declining to exercise its discretion to grant a "heartland" departure, seemed to strongly suggest that the resulting guideline range for this defendant – even before it departed – was an appropriate guidelines range which, in turn, the government submits post-*Booker*, is presumptively reasonable:

>I think both in terms of role, in terms of quantity, in terms of time in the drug conspiracy, that the Court has, in effect, by its finding, what was the jointly undertaken activity of this defendant, in effect made this case not (inaudible) *but, in fact, in a guideline range which is very much reflective of where the sentencing commission thought a defendant like David L. Burden, for exacting the number of drug transactions that he did, and engaging in the other crimes that he did, ought to fall.*

Sentencing Transcript, 10/8/2003 at 71-72 (emphasis added).

In sum, on this record – and in light of the defendant's RICO conviction, his involvement in an extensive narcotics trafficking conspiracy, and his personal participation in crimes of violence in aid of racketeering; as well as the Court's comments at sentencing that the range it reached was "very much reflective of where the sentencing commission thought a defendant like David L. Burden, for exacting the number of drug transactions that he did, and engaging in the other crimes that he did, ought to fall" – it is apparent that the Court would not likely have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory.

## IV. Conclusion

For the foregoing reasons, in conformity with the procedures outlined in Crosby, this Court should indicate, for the record, that after consideration of the defendant's Guidelines range and all of the factors listed in 18 U.S.C. § 3553(a), the defendant should not be re-sentenced.

    Respectfully submitted,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY


    STEPHEN B. REYNOLDS
    ASSISTANT UNITED STATES ATTORNEY
    FEDERAL BAR NO. CT19105
    UNITED STATES ATTORNEY'S OFFICE
    915 LAFAYETTE BOULEVARD
    BRIDGEPORT, CT 06604
    (203) 696-3000
    (203) 579-5575 (fax)
    Stephen.Reynolds@usdoj.gov

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was forwarded by mail on August 3, 2005 to:

Robert M. Frost, Jr., Esq.
Zeldes, Needle & Cooper, PC
1000 Lafayette Boulevard
Suite 500
P. O. Box 1740
Bridgeport, CT  06601-1740

This is also to certify that a courtesy copy of the foregoing was hand-delivered on August 3, 2005 to:

The Hon. Janet C. Hall
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Jacqueline Carroll
United States Probation Officer
U.S. Probation Office
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

_____
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY